1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11   JEANETTE HALL,                          Case No.: 12-cv-5672 JSC

12            Plaintiff,                       **ORDER RE: PLAINTIFF'S MOTION
                                             FOR SUMMARY JUDGMENT AND
13        v.                                 DEFENDANT'S CROSS-MOTION
                                             FOR SUMMARY JUDGMENT (Dkt
14                                           Nos. 17, 20)**
     CAROLYN W. COLVIN, Commissioner
15   of Social Security,

16            Defendant.

17

18

19          Plaintiff Jeanette Hall brings this action pursuant to 42 U.S.C. § 405(g) seeking

20   judicial review of a final decision by Defendant Carolyn W. Colvin[1], the Commissioner of

21   the Social Security Administration, denying her disability benefits.   Pending before the

22   Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and Defendant's Cross-

23   Motion for Summary Judgment (Dkt. No. 20).   For the reasons set forth below, the Court

24   GRANTS Plaintiff's motion for summary judgment in part and DENIES Defendant's cross-

25

26

27   _____

     [1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin, the Acting
28   Commissioner of Social Security, is substituted for the former Commissioner Michael J.
     Astrue in this action.

motion for summary judgment and REMANDS for a new hearing consistent with this Order.[2]

## BACKGROUND

### A.    Procedural History

Plaintiff Jeanette Hall filed an application for social security disability insurance benefits under Title II of the Social Security Act and for supplementary security income payments under Title XVI of the Social Security Act on June 14, 2010 and June 29, 2010, respectively.  *See* Administrative Record ("AR") 140-143 and 144-150.  Her application was initially denied by the Social Security Administration ("SSA") and also on reconsideration. She then timely filed a request for a hearing before an administrative law judge ("ALJ").

On July 15, 2011, Plaintiff, represented by attorney Michael Paul, appeared for her hearing before ALJ Timothy C. Terrill in San Rafael, California.  Plaintiff and vocational expert Malcolm J. Brodzinsky, M.A. testified during the hearing.  On August 5, 2011, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act and regulations.  AR 26.  Plaintiff timely filed a request for review, but the Appeals Council denied review.  AR 1.

### B.    Relevant Factual Background

Plaintiff Hall, now 33, applied for disability benefits following her involuntary commitment at California Pacific Medical Center in San Francisco after threatening to commit suicide on May 22, 2010.  At the time she was committed she was living with her father and her two minor children then ages 3 and 8; however, her father had recently initiated proceedings to assume guardianship over the children.  AR 256.  Plaintiff was admitted for inpatient psychiatric evaluation and treatment and was prescribed Wellbutrin. She discharged herself against medical advice five days later and returned to her father's home.  AR 258.  The discharge summary indicates a final discharge diagnosis of depression NOS, personality disorder NOS by history, a history of cholecystemctomy, chronic neck and

---

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1  back pain, and chronic mental illness, social isolation, financial stresses, and

2  unemployment.[3]  AR 258.

3          While Plaintiff was hospitalized her children were removed from her father's home by

4  Child Protective Services; her youngest child now lives with the child's biological father,

5  and her mother has guardianship of her older child. AR 289.  Plaintiff left her father's home

6  shortly after discharge from the hospital and began staying with friends, occasionally her

7  mother, and often in a tent at a local park.  At the time of the hearing, she was homeless.  AR

8  48.  She testified that she has thoughts of harming herself or others when she gets

9  overwhelmed and thinks about her whole situation.  AR 52.  She has a social phobia which

10  prevents her from taking public transportation alone so if she needs to get somewhere she

11  uses her bike or asks her mother for a ride.  AR 53.  She cries easily and has extreme mood

12  swings so she "can go from completely fine to completely lashing out in anger to completely

13  crying to completely feeling calm in the next minute." AR 55.

14          According to a statement submitted by Plaintiff's father in August 2010, he was

15  concerned about her "depression causing her difficulties to look for work, care for her kids,

16  even get out of bed, make herself look presentable – she has no job, no money, no home, no

17  license [and] medical insurance that is ending – so no psychiatric help." AR 231.  Her father

18  indicated that her conditions affect her memory, concentration, understanding, ability to

19  follow instructions and ability to get along with others.  AR 229.  He described Plaintiff's

20  daily activities as often waking later than 5:00 p.m., picking her face, renting and watching

21  movies, lotto scratchers, playing solitaire on the computer, hanging out at a friend's house or

22  in his garage with friends until 3:00-4:00 a.m.  AR 224.  Her father stated that Plaintiff

23  handles stress poorly, when she feels overwhelmed she shuts down, feels suicidal, wants to

24  be alone and sometimes becomes very angry or abusive.  AR 230.

25

26

27  ──────────────

[3] For purposes of this Order, the Court only considers Plaintiff's mental health conditions
28  rather than her neck or back pain as Plaintiff has not challenged the ALJ's finding that the
later do not render her disabled under the statute.

### 1) The Medical Evidence

Following her discharge from California Pacific Medical Center for psychiatric treatment and evaluation, Plaintiff was referred to the Sonoma County Department of Health Services, Mental Health Division where she came under the treatment of Dr. Edwin L. Merrin in June 2010.  At the time of her first visit with Dr. Merrin his initial impression was noted as "Depression NOS, rule out borderline personality disorder, psychostimulant abuse or dependence likely.  I am not sure antidepressants would be useful, and much of her symptomatology is now probably situational, but it may be worthwhile conducting a genuine trial of the mediation she is currently on."  AR 346.

A month later he noted that she was "[w]ithdrawn, somewhat resigned looking" and "[a]s before, not clear whether she has a medication responsive form of depression."  AR 342 (8/24/10).   Two months later he described Plaintiff as "very depressed…sobbing, depressed mood, expresses low opinion of self, hopelessness…meets symptom criteria for MDD [major depressive disorder], although duration is a question."  AR 335 (10/26/10).  A few months later: "anxious, depressed, feels victimized by unfair world…pre dysphoric, possibly because of boyfriend, social isolation.  And not convinced there is a medication answer at this time."  AR 332 (1/4/11).  There was little change over the next couple of months: "[s]ad, depressed, psychomotor retardation…No apparent response to medication and she had trouble taking it regularly."  AR 406 (3/15/11). A month later, at the end of April 2011, things seem to have improved as he described her as "[n]ow living with her mother…appears reasonably functional. Possible mild benefit from citalopram, but there are so many changes and issues in her life it is hard to tell."  AR 405 (4/26/11).

Plaintiff's treatment with Dr. Merrin ended in May 2011.  At that time he noted that she had: "chronic depression, underlying personality disorder, functionally impaired but with potential for rehabilitation."  AR 404 (5/31/11).  He completed a Mental Residual Functional Capacity Questionnaire ("RFC") at the visit which found that Plaintiff was not a malinger. He concluded that she has multiple symptoms including: deeply ingrained, maladapative patterns of behavior; difficulty thinking or concentrating; disorientation to time and place;

United States District Court
Northern District of California

emotional withdrawal or isolation; feelings of guilt or worthlessness; mood disturbance; persistent disturbances of mood or affect; sleep disturbance; and thoughts of suicide."  AR 398-400.  Dr. Merrin found that Plaintiff had marked limitations in (1) the ability to maintain attention and concentration for extended periods of time, (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3) the ability to complete a normal work-day and work-week, without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (4) the ability to tolerate normal levels of stress. AR 401-402.  He further found that she would be absent more than four days per month due to her impairments.  AR 402.

From September 2010 through at least June 2012, Plaintiff was also under the care of psychotherapist Alice Pett-Hannum, MFT.[4]  In February 2011, Ms. Petty-Hannun wrote that she agreed with the diagnosis of borderline personality disorder and stated that Plaintiff's "symptoms of depression have been quite prevalent throughout the course of her therapy." AR 392, 394.  Plaintiff told Ms. Petty-Hannun that she has chronic difficulty getting and keeping jobs because of her depression, her poor memory, and her difficulty getting along with coworkers.  AR 394.  Ms. Petty-Hannun described "the combination of depression and personality issues[as] mak[ing] her situation one that is somewhat rigid and difficult to change."  AR 394-395.  In a follow-up report submitted by Ms. Petty-Hannun in June 2011, she stated that since February 2011 Plaintiff's mental health had decompensated due to situational life stressors that Plaintiff had not been able to address due to her mental health issues.  AR 407.  Ms. Petty-Hannun described Plaintiff's judgment as "poor and her anxiety and depression symptoms quite debilitating."  AR 408.

---

[4] The administrative record ends with a report from Ms. Petty-Hannun dated June 11, 2012 which was submitted to the Appeals Council with Plaintiff's request for review of the ALJ's decision.  The Appeals Council declined to consider the June 2012 report because it was not part of the ALJ's decision which decided Plaintiff's case based on information available through August 5, 2011.  AR 1-2.

Plaintiff was also examined by Deborah von Bolschwing in connection with her social security application.  Dr. von Bolschwing concluded that Plaintiff has an overall intellectual ability within the borderline to low average range and found that her performance on memory tests indicated that she has "mildly impaired auditory memory functioning and mildly impaired visual memory functioning."  AR 291.  Dr. von Bolschwing diagnosed Plaintiff with mood disorder NOS, personality disorder with borderline features, and intellectual functioning within the borderline impaired to low average range.

### 2)  Plaintiff's Employment History

Plaintiff was last employed as a retail cashier part-time at Dollar Tree in January 2010.  AR 46.  She was terminated from her employment there when she failed to show up to work as a result of confusion regarding her schedule.  AR 46.  Between 1996 and 2010, Plaintiff worked part-time for several different retail establishments and earned a total of $51,891.04 or an average of $3,459.40 per year.  AR 154.  The ALJ concluded that her earnings records from 2005-2009, which reflect that she earned $23,150.82 over this four year period, do not constitute substantial gainful activity under 20 C.F.R. § 404.1574.   AR 28, 205.

At the hearing, the vocational expert, Mr. Brazinski, testified that Plaintiff could not perform any of her past work, but that she could perform work at a medium exertional level such as hand packaging or at the light exertional level as a small products assembler.  AR 61-62.

### LEGAL STANDARDS

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53 F.3d at 1039.

1   Determinations of credibility, resolution of conflicts in medical testimony and all other

2   ambiguities are to be resolved by the ALJ. *See id.*; *Magallenes*, 881 F.2d at 750. "The ALJ

3   is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753

4   F.2d 1450 (9th Cir. 1984) (internal citations omitted); *see Batson v. Commissioner*, 359 F.3d

5   1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one

6   rational interpretation, we must defer to the ALJ's conclusion."). "The court may not engage

7   in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

## DISCUSSION

9   A claimant is entitled to disability insurance benefits if she can demonstrate that she is

10  unable to engage in substantial gainful activity due to a medically determinable physical or

11  mental impairment which can be expected to result in death or last for a continuous period of

12  not less than 12 months. 42 U.S.C. § 423(d)(1). The ALJ conducts a five-step sequential

13  inquiry to determine whether a claimant is entitled to benefits. 20 C.F.R. § 416.920. At the

14  first step, the ALJ considers whether the claimant is currently engaged in substantial gainful

15  activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in

16  substantial gainful activity, the second step asks if the claimant has a severe impairment or

17  combination of impairments (i.e., an impairment that has a significant effect on the

18  claimant's ability to function); if the claimant has a severe impairment, the third step asks if

19  the claimant has a condition which meets or equals the conditions outlined in the Listings of

20  Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have

21  such a condition, the fourth step assesses the claimant's residual functional capacity and

22  determines whether the claimant is still capable of performing past relevant work; if the

23  claimant is not capable of performing his past relevant work, the fifth and final step asks

24  whether the claimant can perform any other work based on the claimant's residual functional

25  capacity, age, education, and work experience. *Id.* §§ 404.1520(b)-404.1520(f)(1).

26  Here, the ALJ determined at the first step that Plaintiff had not engaged in substantial

27  gainful activity under the regulations since the alleged onset date of January 1, 2005. At the

28  second step, the ALJ concluded that Plaintiff has the following severe impairments: affective

United States District Court
Northern District of California

1   disorder, personality disorder, substance addiction disorder in remission, chronic neck and

2   back pain, and obesity.  However, at the third step, the ALJ found that Plaintiff's

3   impairments did not meet the Listings either singly or in combination.  In particular, he

4   found that she had moderate, but not marked, difficulties in the activities of daily living,

5   social functioning, maintaining concentration, persistence, or pace, although he found that

6   she had one to two episodes of decompensation of an extended duration based on her

7   hospitalizations.  At step four, the ALJ concluded that Plaintiff had the residual functional

8   capacity to perform medium work limited to simple, repetitive, routine work with only

9   occasional interaction with supervisors, co-workers, and the public.  Having so concluded, he

10  determined that she was not disabled under the Act.

11       Plaintiff contends that the ALJ (1) improperly rejected the medical evidence from her

12  treating physicians, and (2) failed to provide legally sufficient reasons to reject her

13  testimony.   Defendant counters that the ALJ's decision to give less weight to the opinions of

14  Plaintiff's treating physicians and his credibility finding were both supported by substantial

15  evidence.

16       **A.  <u>The ALJ's assessment of the opinions of Plaintiff's treating physicians</u>**

17       In the Ninth Circuit, courts "distinguish among the opinions of three types of

18  physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but

19  do not treat the claimant (examining physicians); and (3) those who neither examine nor treat

20  the claimant (nonexamining physicians*)." Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

21  Generally, the opinion of a treating physician as to the nature and severity of a claimant's

22  impairment(s) is given more weight than that of a non-examining physician. *Bray v. Comm'r*

23  *of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  Nevertheless, a treating

24  physician's opinion is only regarded as controlling where it is "well-supported by medically

25  acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

26  substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If a treating physician's

27  opinion is contradicted by that of another physician, the ALJ may only reject the treating

28  physician's opinion if the ALJ provides "specific and legitimate" reasons supported by

substantial evidence in the record. *Lester*, 81 F.3d at 830 (internal citation omitted). However, if the treating physician's opinion is not contradicted, it can only be rejected for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

Here, the ALJ gave less weight to the opinions of treating physicians Dr. Merrin and Ms. Petty-Hannum, MFT, who had concluded that based on Plaintiff's depression and personality disorder she would be unable to perform work activity on a sustained basis. AR 32. The ALJ discounted Dr. Merrin and Ms. Petty-Hannum's opinions on two grounds: (1) because "when considering the depressive disorder and personality disorder" the opinion of Dr. von Bolschwing that Plaintiff has "a retained capacity for simple, routine, repetitive tasks with occasional interaction with co-workers, supervisors, and the public" was entitled to more weight; and (2) the ALJ was "not convinced that the life choices made by the claimant are due to her emotional disorders but are simply choices she has made that have caused emotional stress," concluding that "[w]hile the emotional reactions are attended by abnormal medical signs, they are not of the level to support the opinions of Dr. Merrin and Ms. Petty-Hannum." AR 32.

The Court first reviews the evidence with respect to the opinions of Dr. Merrin, Ms. Petty-Hannum, and Dr. von Bolschwing, and then considers the ALJ's grounds for giving more weight to the opinion of Dr. von Bolschwing, the examining physician, than Dr. Merrin and Ms. Petty-Hannum, her treating physicians.

### 1) The Medical Evidence

#### a. Dr. Merrin

As discussed above, Dr. Merrin treated Plaintiff for nearly a year and concluded that she had: "chronic depression, underlying personality disorder, [and was] functionally impaired but with potential for rehabilitation." AR 404 (5/31/11). With respect to her ability to work, Dr. Merrin completed a mental RFC and found that she has marked limitations in her ability to maintain attention and concentration, perform activities within a schedule, complete a normal work-day or work-week without interruptions from psychologically-based symptoms, and tolerate a normal level of stress. AR 401-402. Based on her

1  impairments, Dr. Merrin concluded that she was likely to be absent from work more than

2  four days per month.  AR 402.

3       The ALJ ignored Dr. Merrin's RFC and instead found that Dr. Merrin "provide[d]

4  further insight that much of claimant's difficulties are the result of her life choices."  AR 32.

5  The ALJ noted that "Dr. Merrin is unsure that medications would help improve the

6  claimant's symptoms, explaining that claimant's difficulties were situational."  AR 32.  The

7  ALJ's opinion selectively takes portions of Dr. Merrin's reports to support his conclusion

8  that Plaintiff's situation is the result of life choices and wholesale ignores other portions of

9  Dr. Merrin's opinion.

10      For example, the ALJ states that in his progress reports "Dr. Merrin is unsure that

11  mediations would help improve the claimant's symptoms, explaining that claimant's

12  difficulties were situational."  AR 32.  The ALJ also relies on statements in Dr. Merrin's July

13  2010 and January 2011 reports stating "much of her symptomatology now is probably

14  situational" and "more dysphoric, possibly because of boyfriend, social isolation.  Am not

15  convinced there is a medication answer to this at this time," respectively.  AR 346, 332.

16  However, the ALJ ignores that each of Dr. Merrin's reports noted that Plaintiff was

17  depressed and his final report concluded that she had "chronic depression, underlying

18  personality disorder, [and was] functionally impaired with potential for rehabilitation."  AR

19  404.  The ALJ also fails to comment on Dr. Merrin's statement that it is "not clear whether

20  she has a medication responsive form of depression."  AR 342.  When viewed as a whole,

21  Dr. Merrin's treatment notes do not suggest that Plaintiff is only depressed because of her

22  current life situation; rather, the ALJ assumes that Plaintiff is depressed because she was

23  homeless and had lost custody of her children rather than vice versa.  Notably, at the time

24  Plaintiff was involuntarily admitted for psychiatric treatment she was living with her father

25  and had custody of her children; indeed, her father noted in his statement prepared August

26  23, 2010 that she has "deepening depression, less motivation, zero self-esteem, can't feel

27  happy – not allowed, sleeping till 5pm most days, easily overwhelmed – tears, violence

28  result when pushed" and that he's been worried about her "for years."  AR 229, 231.

United States District Court
Northern District of California

### b.  Ms. Petty-Hannum

Ms. Petty-Hannum was Plaintiff's psychotherapist from September 2010 through the time she filed her appeal of the underlying denial.  The ALJ appears to rely on Ms. Petty-Hannum's statement that the "client['s] mental health has decompensated due to situational life stressors that client has not been able to address due to her mental health issues" to support his conclusion that she, like Dr. Merrin, attributed a number of Plaintiff's issues to situational life choices rather than mental illness.  AR 407.   While Ms. Petty-Hannum does detail a variety of situational factors in Plaintiff's life – a car accident resulting in loss of her vehicle and only means of independent transportation, loss of her housing, loss of guardianship over her children, lack of medication due to an issue with her medical coverage – she also states that the factors of being "out of medication, unable to use public transportation without a companion, homeless[ness] and *continuing to struggle with a debilitating mental health condition [] impair her ability to deal with life on life's terms*." AR 407-408 (emphasis added).

### c.  Dr. von Bolschwing

Dr. von Bolschwing examined Plaintiff in connection with her social security application.  Notably, her assessment came with the caveat that her evaluation was "limited in scope" and was "based on only one session of client contact, in a structured environment, with pre-authorized tests."  AR 291.  Indeed, the examination appears to have focused on Plaintiff's performance on certain tests (WAIS-IV, WRAT-IV, Trail-Making, and Bender Gestalt), the results of which indicated that Plaintiff had an overall intellectual ability within the borderline to low range, mildly impaired memory functioning, and borderline to low average for academic abilities.  AR 290-291.  Dr. von Bolschwing observed that Plaintiff was mildly depressed, but found that "her psychiatric symptoms appear to be mostly controlled by medication" and diagnosed her with mood disorder NOS and personality disorder NOS with borderline features.  AR 292.  Dr. von Bolschwing concluded that Plaintiff's ability to interact with the public, supervisors, and coworkers was limited, but did not find that she could not work.

**2)  The ALJ's decision to give less weight to the opinions of Dr. Merrin and Ms. Petty-Hannum**

"Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record." *Id.* (citing § 404.1527(d)(3)-(6)).

The ALJ stated that he was giving less weight to the opinions of Dr. Merrin and Ms. Petty-Hannum because although Plaintiff's "emotional reactions are attended by abnormal medical signs, they are not of the level to support the opinions of Dr. Merrin and Ms. Petty-Hannum." AR 32.  Thus, "when considering the depressive disorder and personality disorder, the undersigned relies on the opinion of the state agency consulting physician and Dr. von Bolschwing to find that there is a retained capacity for simple, routine, repetitive tasks with occasional interaction with co-workers, supervisors, and the public.  The opinions of Dr. Merrin and Ms. Petty-Hannum were considered but given less weight based on the above evaluation." *Id.*  As an initial matter, the Court notes that there is no report from a state agency consulting physician other than Dr. von Bolschwing in the administrative record.[5]  With respect to Dr. von Bolschwing's findings, to the extent that the ALJ in the

---

[5] To the extent that the ALJ is referring to the "Case Analysis" documents at Exhibits 10F and 11F (AR 372, 375), the Court notes that the ALJ did not specifically cite or rely on the contents of these documents at all in his decision.  Further, as non-treating and non-examining physicians the opinions espoused therein should have been afforded less weight than the opinions of Dr. Merrin, Ms. Petty-Hannum, and Dr. von Bolschwing.  *Orn*, 495 F.3d at 631.

United States District Court
Northern District of California

foregoing language finds that Dr. von Bolschwing's findings contradict those of Dr. Merrin and Ms. Petty-Hannum, the ALJ did not identify "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

The ALJ cites Dr. von Bolschwing's conclusion that Plaintiff could perform simple routine tasks with occasional interaction with others as a reason to reject the contrary conclusions of Dr. Merrin and Ms. Petty-Hannum. In doing so, however, the ALJ omits any mention of Dr. Merrin's mental RFC. *Compare* AR 29 *with* AR 398. In his RFC, Dr. Merrin found that Plaintiff has marked limitations in her ability to maintain attention and concentration, perform activities within a schedule, complete a normal work-day or work-week without interruptions from psychologically-based symptoms, and tolerate a normal level of stress. AR 401-402. Based on her impairments, Dr. Merrin concluded that she was likely to be absent from work more than four days per month. AR 402.

Further, the ALJ fails to note the many inconsistencies between Dr. von Bolschwing's October 25, 2010 evaluation and Dr. Merrin's treatment notes from his session with Plaintiff the *following day* where he noted that in contrast to Dr. von Bolschwing's description of Plaintiff as mildly depressed she was "sobbing, depressed mood, expresses low opinion of self, hopelessness" and has "more obvious depressive symptoms than prior meetings, meets symptom criteria for MDD." *Compare* AR 292 *with* AR 335. Dr. Merrin also stated that Plaintiff continues in therapy (which is consistent with Ms. Petty-Hannum's treatment notes *see* AR 392), although Dr. von Bolschwing's report states that "she is currently not attending counseling with a mental health professional." AR 290.

"[I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings," "[p]articularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Here, rather than provide "detailed, reasoned and legitimate rationales" for giving more weight to the opinion of Dr. Bolschwing than those of Dr. Merrin and Ms. Petty-Hannum, the ALJ's decision focuses on his conclusion that "the claimant's life choices cannot be considered to show the severity of the emotional disorders" such that

the abnormal medical signs are not of the level to support Dr. Merrin and Ms. Petty-Hannum's opinions. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

The ALJ cites the following as evidence that Plaintiff's problems are attributable to lifestyle choices rather than mental health issues:

1) Plaintiff "did not seek treatment for her emotional disorder until confronted with the loss of custody of her children."
2) "Prior to her May 2010 hospitalization, the claimant was working, albeit on a part-time schedule in spite of her alleged emotional disorders."
3) "Although [she was] informed that return of custody of her children would be seriously compromised if she did not continue with the May 2010 inpatient treatment, the claimant left against medical advice."
4) "[S]he has been less than compliant in following a prescribed medical regimen, claiming poor memory, but psychological testing by Dr. von Bolschwing disclosed that the claimant retained sufficient memory function for simple tasks."
5) "The claimant was advised of services available for homeless individuals."
6) "Even after being advised that the return of her children would improve if she had adequate housing, she nonetheless preferred living on her own terms in a tent and her car."

AR 32. The ALJ concludes that "[t]hese are life choices and not the effects of an emotional disorder." *Id*. The Court will address each in turn.

First, Plaintiff did not actually seek treatment for her mental health problem at all – she was involuntarily committed after threatening to kill herself while simultaneously holding a knife and her three-year-old child. AR 346. Further, "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the examining physician's] assessment of claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal citation omitted).

Second, the ALJ cites Plaintiff's employment history as demonstrating that she was able to work despite her "alleged emotional disorders." However, the ALJ also found that

this same employment history failed to constitute "substantial gainful activity" likely because in the year preceding her application she earned $2,774.72. AR 153. This is "part-time" employment in the loosest sense. The ALJ does not explain this inconsistency in his findings.

Third, as with Plaintiff's failure to seek treatment for her mental health issues, that Plaintiff did not continue with inpatient treatment despite being told that abandoning treatment would undermine her efforts to maintain custody of her children does not suggest that her mental health issues are not legitimate. The ALJ "may not substitute his own view of the effects of a mental impairment on a claimant for that of an examining psychologist." *Nelsen v. Barnhart*, No. 00-2986, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) (*citing Rohan v. Chater*, 98 F.3d 966, 971 (1st Cir. 1996) (holding ALJ erred by rejecting treating psychiatrist's opinion that plaintiff was disabled where ALJ "simply indulged his own lay view of depression" for that of treating psychiatrist)). There is nothing in the record that suggests that Plaintiff's undermining efforts to maintain custody was inconsistent rather than consistent with her mental impairment.

Fourth, the ALJ relies on Dr. von Bolschwing's memory skills testing to discredit any non-voluntary explanation for Plaintiff's lack of compliance with her medical regimen; however, Dr. von Bolschwing described all Plaintiff's memory functioning as "mildly impaired." Further, Plaintiff's treating physicians note several months of compliance with the medical regimen, and other explanations, including lack of insurance and access to medication as explanations for her periods of non-compliance. AR 334, 335, 341, 342, 408. *See Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) (failure to follow prescribed treatment, when there is a good reason not to do so, may not be used as a basis to deny disability benefits); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (collecting cases finding that: "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (internal citations and quotations omitted). Moreover,

15

notwithstanding Plaintiff's compliance or lack thereof, according to Dr. Merrin it is not clear that Plaintiff has a form of depression that is amenable to medication.  AR 342.

Fifth, the Court fails to see what the ALJ's unsupported assertion "that claimant was advised of the services for homeless individuals" has to do with the severity of her mental health issues.

Sixth, the ALJ likewise makes the unsupported statement that Plaintiff chose to live in her tent and car despite being advised that this would undermine her chances of having her children returned.  Although Ms. Petty-Hannum noted in June 2011 that Plaintiff is "currently choosing to be homeless rather than live in a family member's home due to feeling that being homeless is preferable to trying to meet the expectations of the family member who is offering her housing," the very next sentence states that Plaintiff "continues to experience debilitating depression and feelings of anxiety for two to three days weekly."  AR 408.  Thus, the ALJ's conclusion that this is a choice that Plaintiff has made rationally, rather than a byproduct of her mental health issues, is unsupported in the record.  Moreover, there is no suggestion in Ms. Petty-Hannum's report or elsewhere that Plaintiff was advised at that time that by doing so she was foregoing an opportunity to be reunited with her children.  To the contrary, earlier in that same report Ms. Petty-Hannum stated that in March 2011 Plaintiff agreed to transfer guardianship of her children to other members of her family; thus, her then-existing living situation was immaterial to custody of her children.  AR 407.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion); *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports her conclusions); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)

1    ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts

2    that are favorable to a finding of nondisability") (citing *Switzer v. Heckler*, 742 F.2d 382,

3    385–86 (7th Cir. 1984)).

4          Here, the ALJ selectively relied on those portions of the reports of Dr. Merrin and Ms.

5    Petty-Hannum that supported his conclusion and ignored those portions that did not.  The

6    opinion of the treating physician, even if contradicted by the opinion of another physician,

7    can only be rejected for specific and legitimate reasons that are supported by the record.

8    *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.1995).  The ALJ's decision fails to offer specific

9    and legitimate reasons for discounting the opinions of Dr. Merrin and Ms. Petty-Hannum.

10   Accordingly, the Court REMANDS for reconsideration in light of this Order.

11         **B.  The ALJ's credibility findings**

12         The ALJ also concluded that "[w]hen considering the evidence as a whole, the

13   undersigned finds that the alleged intensity, persistence, and functionally limiting effects of

14   the subjective complaints are not entirely credible."  AR 34.  In evaluating the credibility of a

15   claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.

16   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must

17   determine whether the claimant has presented objective medical evidence of an underlying

18   impairment which could reasonably be expected to produce the pain or other symptoms

19   alleged." *Id*. at 1036 (internal citations and quotation marks omitted). The claimant is not

20   required to show that her impairment "could reasonably be expected to cause the severity of

21   the symptom she has alleged; she need only show that it could reasonably have caused some

22   degree of the symptom." *Id*. (internal quotation omitted). "[O]nce the claimant produces

23   objective medical evidence of an underlying impairment, an adjudicator may not reject a

24   claimant's subjective complaints based solely on a lack of objective medical evidence to

25   fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th

26   Cir. 1991) (internal citation omitted).  At the second step, unless there is affirmative

27   evidence showing that the claimant is malingering, "the ALJ can reject the claimant's

28   testimony about the severity of her symptoms only by offering specific, clear and convincing

17

1    reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "General

2    findings are insufficient; rather, the ALJ must identify what testimony is not credible and

3    what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834 (internal

4    citations omitted).

5          Because the ALJ did not find that Plaintiff was malingering, he was required to

6    provide clear and convincing evidence to justify his rejection of her testimony.  The Court

7    concludes that the ALJ failed to do so.

8          In reaching his decision, the ALJ found that Plaintiff's "daily activities have not been

9    seriously compromised by her emotional disorders" because although she "has lost her job,

10   and more importantly, custody of her children, she has survived being homeless, pursues

11   medical care, and recycles for money."  AR 34.  This finding does not identify clear and

12   convincing evidence—that Plaintiff has "survived" being homeless is not a basis to discredit

13   her testimony regarding the extent of her mental health issues.  Further, the ALJ failed to

14   note Plaintiff's testimony that "some days are more difficult than others," and some days she

15   "will just sit there and think about it and then get over stressed and then not even go get cans

16   or not even go eat" and that she has three to four days like this a week where it is hard for her

17   to do anything, as well as her testimony that she has thoughts of harming herself or others

18   when she gets overwhelmed and thinks about her whole situation.  AR 52, 58-59.  *See*

19   *Trevino v. Colvin*, No. 12-7740, 2013 WL 1191803, at *5 (C.D. Cal. Mar. 22, 2013) ("[t]he

20   purported inconsistencies, however, are based on inaccurate characterizations of plaintiff's

21   testimony or overstatements of the record, and therefore cannot support discounting

22   plaintiff's credibility").

23         The ALJ also relied on Plaintiff's part-time work from 2005-2010 as evidence that

24   she is able to perform work despite her emotional disorders; however, as discussed above,

25   this finding is unsupported by the record and undermined by the ALJ's own finding that she

26   had not engaged in substantial gainful activity since 2005.  Likewise, the ALJ's conclusion

27   that except for when she is homeless she is able to perform household chores, cooking, and

28   shopping is illogical—the ALJ does not dispute that Plaintiff is homeless, she therefore

United States District Court
Northern District of California

18

cannot be said to be performing ordinary household chores.  "Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting ." *Elizondo v. Astrue*, No. 09-0989, 2010 WL 3432261, at *5 (E.D.Cal. Aug.31, 2010).  Further, in discounting Plaintiff's statement that she lost custody of her children due to her mental health issues, the ALJ states that "the medical evidence []noted that the claimant spent much time with friends until early morning and slept until about noon" citing Exhibit 7E.  *Id.*  Exhibit 7E is Plaintiff's work history report—this is not medical evidence. AR 209.

Finally, the ALJ found that the statement of Plaintiff's father is contrary to that of the claimant and diminishes her credibility; however, the ALJ failed to cite anything in the record in support of this statement.  In fact, just the opposite is true: Plaintiff's father stated that Plaintiff's "depression [was] causing her difficulties to look for work, care for her kids, even get out of bed, make herself look presentable – she has no job, no money, no home, no license [and] medical insurance that is ending – so no psychiatric help."  AR 231.  The ALJ not only erred in misstating the facts, but also in failing to take into account Plaintiff's father's actual statements.  "Lay testimony as to a claimant's symptoms is competent evidence which the Secretary must take into account unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citation and quotations omitted).

Accordingly, the Court finds that the ALJ's finding with respect to Plaintiff's credibility is not supported by specific, clear and convincing evidence.  The Court therefore REMANDS for proper consideration of Plaintiff's credibility consistent with this Order.

## C. The ALJ's failure to consider Dr. Merrin's RFC at Step Three

Plaintiff's motion focuses on the ALJ's failure to take into account Dr. Merrin's opinions at Step Four; however, there are also issues with the ALJ's decision at Step Three. Although the ALJ concluded at Step Two that Plaintiff had certain severe impairments, he

found at Step Three that the impairments did not meet or equal the conditions outlined in the Listings.  At Step Three, "[a] generalized assertion of functional problems is not enough to establish disability." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not quality." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), superseded by statute on other grounds. The specified medical criteria are broken up into three categories: "paragraph A" criteria, "paragraph B" criteria, and "paragraph C" criteria. 20 C.F.R. § 404, Subpt. P, App. 1. The required level of severity for a listed disorder is met when the requirements in both "paragraph A" and "paragraph B" are satisfied, or when the requirements in both "paragraph A" and "paragraph C" are satisfied. *Id*.  The paragraph B factors are those relevant here.  Under paragraph B, the mental impairment must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated (more than three), episodes of decompensation each of extended duration. *Id*.  The ALJ concluded here that Plaintiff was only moderately limited in any of the paragraph B activities, although he noted that she had two periods of extended decompensation of an extended duration.

The ALJ's opinion fails to address Dr. Merrin's findings with respect to the severity of Plaintiff's mental impairments at Step Three.  In finding that Plaintiff's impairments only pose a moderate restriction on activities of daily living, the ALJ relied upon the fact that Plaintiff has been able to perform household chores and cook when she was not homeless, the fact that she was able to shop, and has maintained friendships based on her self-completed function report.  AR 196.  With respect to her social functioning, the ALJ concluded that she was likewise moderately limited despite "chaotic and tumultuous" relationships with her family and boyfriend based on her work history report, CPMC discharge summary, and Dr. Merrin's treatment notes through January 2011 (which does not include the RFC). AR 29 citing 7E (work history report), 1F (CPMC discharge summary),

9F (Dr. Merrin's treatment notes).  Finally, in finding moderate difficulties with respect to concentration, persistence or pace, the ALJ states that he relied on the reports of Dr. Merrin, Ms. Petty-Hannum, and Dr. von Bolschwing.  However, the ALJ does not cite Dr. Merrin's RFC which noted that Plaintiff had marked limitations in her (1) ability to maintain attention and concentration for extended periods, (2) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (3) ability to complete a normal work-day and work-week, without interruptions from psychologically-based symptoms and to perform at a consistent pace without and unreasonable number and length of rest periods.  AR 398.  Nor did he cite to Ms. Petty-Hannum's treatment notes which suggest that Plaintiff's impairments limit her ability to deal with priorities like housing and rebuilding her life.  AR 407.

The Court finds that the ALJ's findings at Step Three are not supported by substantial evidence and his omission of any reference to Dr. Merrin's RFC with respect to the degree of functional limitation at Step Three of the analysis constitutes legal error.  *See* 20 C.F.R. § 404.1520a(e)(4) ("the written decision must incorporate the pertinent findings and conclusions based on the technique" and it "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)"); *see also Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (finding legal error where "the written decision did not document the ALJ's application of the technique[,] did not include a specific finding as to the degree of limitation in any of the four functional areas[, and] simply referenced and adopted the PRTF completed earlier by [another physician]").  The Court therefore REMANDS for reconsideration of Step Three consistent with this Order.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and DENIES Defendant's Cross–Motion for Summary Judgment (Dkt. No. 20). The Court VACATES the Commissioner's final decision and REMANDS for reconsideration consistent with this Order.

**IT IS SO ORDERED.**

Dated: October 17, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California